UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KINGDOM OF BELGIUM, FEDERAL PUBLIC SERVICE FINANCE,<br><br>    Plaintiff,<br><br> v.<br><br>MICHELLE INVESTMENTS LLC PENSION PLAN, RICHARD MARKOWITZ, JOHN VAN MERKENSTEIJN, FGC SECURITIES LLC, ALICIA COLODNER and STEPHEN WHEELER,<br><br>    Defendants. | Case No. _____ |

**COMPLAINT**

Plaintiff Kingdom of Belgium, Federal Public Service Finance ("FPSF Belgium"), for its Complaint against Defendants Michelle Investments LLC Pension Plan ("Michelle Investments"), Richard Markowitz, John Van Merkensteijn, FGC Securities LLC ("FGC Securities"), Alicia Colodner and Stephen Wheeler (collectively, "Defendants"), alleges by its undersigned attorneys as follows:

**Nature of the Case**

1. Plaintiff FPSF Belgium is the agency of the government of the Kingdom of Belgium ("Belgium") charged with the assessment and collection of Belgian taxes. FPSF Belgium is the Belgian equivalent of the United States Treasury Department.

2. This case arises from a fraudulent scheme that caused FPSF Belgium to pay large amounts of money to putative entities in the United States claiming to be owed tax refunds relating to corporate dividends. The Defendants in this action participated in the scheme as primary violators or aiders and abettors.

3. The scheme took advantage of a tax refund arrangement between Belgium and the United States. Under Belgian law, Belgian companies are required to withhold a 25% tax on dividends paid to their shareholders. However, under a double taxation treaty between Belgium and the United States, this withheld amount is reimbursable to U.S. shareholders that meet certain qualifications. In particular, entities that qualify as tax-exempt pension funds under U.S. law may be entitled to a full refund.

4. Defendants Markowitz and Van Merkensteijn used a scheme to mislead FPSF Belgium into paying out dividend tax refunds that were not owed. To accomplish this scheme, they employed a variety of fictitious pension plans, one of which was Michelle Investments.

5. Markowitz and Van Merkensteijn created the appearance that Michelle Investments was a bona fide U.S. pension plan that owned shares in one or more Belgian companies for which dividends had been paid and dividend taxes had been withheld. The Defendants then caused Michelle Investments to request refunds in connection with those purportedly withheld dividend taxes.

6. These refund applications were fraudulent because Michelle Investments was not a bona fide pension plan, Michelle Investments did not own the shares that it claimed to own and Michelle Investments did not earn the dividends it claimed to have earned. In reality, Michelle Investments is nothing more than an alter ego of Markowitz and Van Merkensteijn.

7. Defendants FGC Securities, Colodner and Stephen Wheeler aided and abetted this fraud. They knowingly provided substantial assistance by, among other things, creating false and misleading documentation of Michelle Investments' purported shareholdings and receipt of dividends.

8. In reliance on the false and misleading refund claims submitted on behalf of Michelle Investments, FPSF Belgium paid Michelle Investments or its purported agents a total of €6,059,283, or approximately $7,271,140 at the current exchange rate. FPSF Belgium has been damaged in that amount, plus interest, as well as other costs and expenses incurred investigating the fraud.

**Parties**

9. Plaintiff FPSF Belgium is the agency of the Belgian government charged with the assessment and collection of Belgian taxes. FPSF Belgium is located at Boulevard du Roi Albert II, 33, bus 555, 1030 Brussels, Belgium. FPSF Belgium is an agency of a foreign state under the U.S. Foreign Sovereign Immunities Act.

10. Defendant Michelle Investments is a trust recognized by the U.S. Internal Revenue Service ("IRS"). In submissions to FPSF Belgium, the address listed for Michelle Investments is 40 West 57th Street, 20th Floor, New York, NY 10019. On information and belief, to the extent Michelle Investments has any real existence, each purported participant, member or trustee of Michelle Investments is a citizen of a state of the United States.

11. Defendant Richard Markowitz is a natural person who is a citizen of the State of New York.

12. Defendant John Van Merkensteijn is a natural person who is a citizen of the State of New York.

13. Defendant FGC Securities is a limited liability company organized under the laws of the State of Delaware and with its principal place of business in the State of New York. On information and belief, the sole member of FGC Securities is FGC Holdings LLC ("FGC Holdings"). FGC Holdings is a limited liability company organized under the laws of the State

of Delaware with its principal place of business in the State of New York.  On information and belief, the members of FGC Holdings are John Foley and Demetrios Lyristis, both of whom are natural persons who are citizens of the State of New York.

14.     Defendant Alicia Colodner is a natural person who is a citizen of the State of New York.  At all relevant times, Colodner was a business associate of Markowitz and Van Merkensteijn, and was an employee of a financial services firm run by those Defendants.

15.     Defendant Stephen Wheeler is a natural person who is a citizen of the State of New Jersey.  At all relevant times, he was the head of operations for FGC Securities.

## Jurisdiction and Venue

16.     This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332(a)(4) because the matter in controversy exceeds the sum or value of $75,000 and is between an agency of a foreign state as plaintiff and citizens of a state or of different states.

17.     This Court has personal jurisdiction over each of the Defendants.  The claims in this action arise from the transaction of business in New York, commission of torts in New York and/or use of real property situated in New York.  In addition, many of the Defendants are residents of New York.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## Factual Background

### A. Belgian Dividend Taxation.

19.     Dividends paid by Belgian companies are taxed at the rate of 25% under Belgian law.  Such taxes are collected through a withholding system.  At the time each dividend is paid,

the Belgian company withholds 25% and transfers that amount to FPSF Belgium. The company then pays the net amount (the dividend minus the tax) to its shareholders.

20. Under a tax treaty between the United States and Belgium, tax-exempt residents of the United States, including pension plans, are entitled to refunds of any withholding tax on dividends. To obtain a refund, a pension plan must submit an application to FPSF Belgium with proof of its tax-exempt status and its ownership of a dividend payment that resulted in withholding.

21. The criteria for tax-exempt status in the United States are set forth principally in Sections 401(a) and 501(a) of the Internal Revenue Code, as well as applicable regulations thereunder. Among other things, a tax-exempt pension plan must be for the "exclusive benefit" of an entity's employees or their beneficiaries and must be funded by contributions from the employer or employees.

22. Moreover, a pension plan can receive a full refund only where the dividends at issue are not derived from the carrying on of a business by the pension fund or through an associated enterprise.

**B. Defendants' Fraudulent Scheme.**

23. Beginning in or about 2012, Defendants Markowitz and Van Merkensteijn participated in a scheme to submit fraudulent tax refund claims to FPSF Belgium. The scheme involved the registration of U.S. tax residents that would pose as qualified U.S. pension plans. These entities would represent to FPSF Belgium that they were tax-exempt pension plans and, using documentation from a firm called Solo Capital, would represent that they owned shares in Belgian companies, thus entitling them to full refunds of all withheld dividend tax.

24. One of the tax residents used in this scheme was Michelle Investments. Markowitz and Van Merkensteijn created Michelle Investments in 2012 as a vehicle to make fraudulent tax refund requests. On information and belief, Michelle Investments has no legitimate sponsoring entity with any employees, it does not exist for the exclusive benefit of any such employees or their beneficiaries and it is funded by sources other than any purported employer or employees. Instead, Michelle Investments was used principally for the benefit of Defendants Markowitz and Van Merkensteijn and their fellow participants in the fraud. Markowitz and Van Merkensteijn dominated and controlled Michelle Investments in order to perpetrate a fraud against FPSF Belgium.

25. In submissions to FPSF Belgium, Michelle Investments listed its address as 40 West 57th Street, 20th Floor, New York, NY 10019. At the time, that address was occupied by non-party Argre Management LLC ("Argre"), a financial services firm. Markowitz and Van Merkensteijn were founders and directors of Argre. Defendant Colodner was an Argre employee. These individuals used the 40 West 57th Street address to give Michelle Investments a false appearance of legitimacy. The same address was used for other sham pension plans in connection with other fraudulent tax refund requests to FPSF Belgium and other tax authorities.

26. FPSF Belgium discovered the facts set forth above concerning Michelle Investments in or about January 2021.

27. In addition to creating the appearance that Michelle Investments was a legitimate pension plan, the scheme also depended on showing that Michelle Investments purportedly owned shares in Belgian companies and received related dividends. To accomplish this, Defendants worked with various share custodians and brokers to obtain the necessary false documentation. These participants in the fraud included Defendants FGC Securities and Stephen

Wheeler, FGC's head of operations, as well as non-party Solo Capital Partners LLP ("Solo Capital").

28. Finally, to submit the required paperwork to FPSF Belgium, Defendants enlisted the services of a tax reclaim agent called Acupay System LLC ("Acupay"). To formalize this role, Defendant Van Merkensteijn signed a "Special Power of Attorney" dated August 3, 2012. The power of attorney authorized Acupay to "request" and "collect" tax refunds from "foreign tax authorities" on behalf of Michelle Investments. Van Merkensteijn signed as an "authorised signer" with Colodner signing as a witness.

### C. Defendants' False Representations to FPSF Belgium.

29. From 2012 to 2015, Defendants carried out their scheme to defraud FPSF Belgium by submitting tax refund claims through Acupay on behalf of Michelle Investments. Each claim included a cover letter from Acupay, a tax refund claim form, documentation purporting to show Michelle Investments' share ownership and receipt of dividends, the power of attorney signed by Van Merkensteijn and a statement from the IRS purporting to certify that Michelle Investments was a tax-exempt U.S. pension plan.

30. A chart identifying refund claims made by Michelle Investments is attached as Exhibit A. The chart shows the date of the application, the Belgian company in which Michelle Investments supposedly owned shares and the requested refund amount.

31. Each of these refund claims contained numerous false and misleading representations, described in more detail below.

#### 1. Misrepresentation of Michelle Investments' Status as a Legitimate Pension Plan.

32. Each refund claim represented that Michelle Investments was a legitimate pension plan that qualified for a full refund based on its tax-exempt status under U.S. law.

33. For example, the claims included express statements by Acupay that Michelle Investments was a U.S. pension plan, and that it was seeking a full refund on that basis.

34. In addition, each request included a statement from the IRS for Michelle Investments certifying that "to the best of our knowledge, the above-named entity is a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the U.S. Internal Revenue Code, which is exempt from U.S. taxation under section 501(a) . . . ." This type of IRS statement is called a Form 6166, which the IRS provides to U.S. tax residents upon request.  The IRS does so based on information provided by the applicant and without an independent determination of the entity's status.  On information and belief, Michelle Investments, Markowitz and Van Merkensteijn procured this IRS statement by providing the IRS with false and misleading information.  Markowitz and Van Merkensteijn caused Acupay to include this IRS statement in the tax refund requests.

35. The statements in the refund claims that Michelle Investments was a pension plan were false.  Michelle Investments was not a pension plan because, among other reasons, there was no legitimate employer associated with Michelle Investments, Michelle Investments was not funded by employer or employee contributions and Michelle Investments did not exist for the exclusive benefit of employees and their beneficiaries.

    **2. Misrepresentation of Michelle Investments' Ownership of Shares and Dividends.**

36. Each refund claim represented that Michelle Investments owned shares in a Belgian company and that it had received dividends in connection with those shareholdings.

37. Each refund claim form identified the Belgian company in which Michelle Investments supposedly owned shares, stated the number of those shares, and stated the net dividend that Michelle Investments supposedly received.

38. The claims also included documentation from one or more brokers supposedly showing Michelle Investments' purchase of the relevant shares. For example, for several refund claims, FGC Securities provided "cash equity confirmations" purporting to show Michelle Investments' share purchases. These documents were signed by Stephen Wheeler of FGC Securities.

39. In addition, each refund claim included a purported "dividend credit advice" from Solo Capital. In this document, Solo Capital stated that it was crediting Michelle Investments' account to reflect payment of dividends in connection with the relevant shares. The document purported to describe, among other things, the company in which Michelle Investments supposedly owned shares, the number of shares and their international securities identification number (or "ISIN"), the gross dividend amount, the tax withheld and the net dividend.

40. The statements concerning ownership of shares and dividends by Michelle Investments were false. Michelle Investments did not purchase or own the shares in question, did not receive dividends in connection therewith, and was not entitled to any tax refund. To the extent Michelle Investments was involved in any purported transaction involving a share purchase or receipt of dividends relating to these securities, any such transaction was a sham designed to create the false appearance that Michelle Investments owned the shares, received dividends and/or was entitled to a tax refund.

**D. Payments by FPSF Belgium.**

41. In reasonable reliance on the various false statements made by or on behalf of the Defendants in each of Michelle Investments' refund requests described above, FPSF Belgium paid to Michelle Investments or its agents the requested refund amounts. These payments were

made at various times in the months following Defendants' refund requests.  The amounts paid came to a total of €6,059,283, or approximately $7,271,140 at the current exchange rate.

42. On information and belief, the Defendants distributed these payments among each other, related shell companies and their other co-conspirators.

43. The scheme to defraud FPSF Belgium continued until at least November 2015, when FPSF Belgium suspended payments on refund claims involving Solo Capital.

## Causes of Action

### First Claim for Relief - Fraud
### (Against Michelle Investments, Markowitz and Van Merkensteijn)

44. FPSF Belgium repeats and realleges Paragraphs 1 through 43 above as if fully set forth herein.

45. The tax refund claims submitted on behalf of Michelle Investments contained numerous materially false and misleading statements.

46. Each of Michelle Investments, Markowitz and Van Merkensteijn knowingly caused these refund claims to be submitted.  Michelle Investments, Markowitz and Van Merkensteijn knew that statements in the refund claims were false and/or acted recklessly as to the statements' falsity.  Each of Michelle Investments, Markowitz and Van Merkensteijn knowingly made these statements, and/or caused them to be made, and/or conspired to have them made.  Each of Michelle Investments, Markowitz and Van Merkensteijn did so with the fraudulent intent to induce FPSF Belgium to pay out the requested dividend tax refunds.

47. In reliance on these fraudulent misrepresentations, FPSF Belgium paid out withholding tax refund claims totaling €6,059,283 to Michelle Investments or its agents.  FPSF Belgium suffered damage in that amount, plus interest, as well as the costs of investigating and uncovering Defendants' fraud in an amount to be determined at trial.

48. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, and therefore FPSF Belgium is entitled to punitive damages.

### Second Claim for Relief – Aiding and Abetting Fraud
### (Against FGC Securities, Colodner and Wheeler)

49. FPSF Belgium repeats and realleges Paragraphs 1 through 48 above as if fully set forth herein.

50. Michelle Investments, Markowitz and Van Merkensteijn perpetrated a fraud on FPSF Belgium.

51. FGC Securities, Colodner and Wheeler had actual knowledge of this fraud and knowingly provided substantial assistance to advance the fraud's commission.

52. As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, FPSF Belgium has suffered substantial damages.

53. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, and therefore FPSF Belgium is entitled to punitive damages.

**Request for Relief**

WHEREFORE, Plaintiff FPSF Belgium requests that this Court enter judgment in its favor against Defendants as follows:

a) An award of damages in an amount of no less than €6,059,283 (or approximately $7,271,140 at today's currency exchange rate), plus pre-judgment interest, and further damages in an amount to be determined at trial;

b) Punitive damages;

c) The costs and fees of this action;

d) All other and further relief that is just and proper.

Dated: July 27, 2021
New York, New York

CLIFFORD CHANCE US LLP

s/ Jeff E. Butler

Jeff E. Butler
John P. Alexander
Meredith George
Robert Price
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Plaintiff Federal Public Service Finance of Belgium*

**Exhibit A**

| Date of Application | Belgian Security | Refund Amount |
|---|---|---|
| 8/13/12 | Delhaize Group | € 1,320,000 |
| 8/13/12 | Mobistar | € 1,305,000 |
| 8/13/12 | Mobistar | € 360,000 |
| 10/23/13 | Ageas | € 270,000 |
| 11/19/13 | KBC | € 400,000 |
| 11/19/13 | Solvay | € 205,000 |
| 11/19/13 | Bekaert | € 34,000 |
| 11/25/13 | Delhaize Group | € 161,000 |
| 12/16/13 | Belgacom | € 840,000 |
| 12/16/13 | Umicore | € 86,250 |
| 6/12/14 | Belgacom | € 154,290.78 |
| 6/13/14 | Groupe Bruxelles Lambert | € 130,837.44 |
| 7/23/14 | Ageas | € 187,974.50 |
| 7/24/14 | Anheuser/Busch Inbev | € 604,930.21 |